UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

MAL DUSZAK,                                          :
                                                    :
                Plaintiff,                          :
                                                    :
        v.                                          :       Case No. 07cv0009
                                                    :
EDWARD ABRAHAM ROSENMAN;                            :
WAKISHA ROSENMAN a/k/a WAKISHA                      :
NOCOLAS; FIRST GUARDIAN FINANCIAL                   :
CORPORATION; TRAFALGAR LEASING &                    :
FINANCE CORPORATION; COSMOS                         :
GROUP; WINDSOR CAPITAL, LTD.; FAUZIE                :
MOHAMED a/k/a FAUZIE MOHAMAED;                      :
"JOHN" LNU; JOHN DOES 1-100,                        :
                                                    :
                Defendants.                         :

**DEFENDANTS' OPPOSITION TO EMERGENCY MOTION FOR DISCOVERY**

Defendants Edward Abraham Rosenman, Wakisha Rosenman a/k/a Wakisha Nocolas,

First Guardian Financial Corporation, Trafalgar Leasing & Finance Corporation, Cosmos Group,

Windsor Capital Ltd., and Fauzie Mohamed a/k/a Fauzie Mohamaed (collectively, the

Defendants"), by and through their undersigned attorney, oppose the Plaintiff's motion pursuant

to Fed. R. Civ. P. 26(d) to allow advance discovery (the "Motion").

1.  The Motion arises from a continuing effort to shield the true nature of this action and the

    identity of the person behind it. As was noted previously, the alleged *pro se* plaintiff lists

    as her coordinates the telephone number and mailing address of an individual named

    "Keith Maydak," a convicted felon, self-anointed lawyer and the author of countless

    harassment suits. His exploits have been covered in the press (as is evidenced by exhibit

    1 hereto) and Mr. Maydak maintains running "blogs" to which he proudly attaches his

    various legal pleadings in this case and the myriad other lawuists he is "prosecuting."

    See, e.g., www.fgfc.us; www.ibcx.info; http://www.kmf.org/maydak/index.html.

2. Though he is not a member of the bar of this Court, Mr. Maydek has advised Defendants' New York counsel that he represents his wife, Mal Duszak – *i.e.*, the "pro se" plaintiff in these proceedings. Mr. Maydak also transmitted a telefax to counsel in which he maintained that he is authorized to speak on behalf of the Plaintiff and has the ability to resolve the matter on the Plaintiff's behalf. See Exhibit 2 hereto.

3. In an effort to gain ground before his wife---the alleged pro-se plaintiff (and a resident of Poland)-- must actually appear in Court, Mr. Maydak is casually issuing subpoenas by the suppression of a laptop button. Exhibit 3 hereto consists of a set of the subpoenas issued in the Southern and Eastern Districts of New York and in the Western District of Missouri. Two of these subpoenas have already been quashed, a third remains under challenge. Having reviewed Mr. Maydak's opposition to the motion to quash, the District Court for the Eastern District of New York ordered that "plaintiff Mal Dusak is enjoined from issuing and/or serving any other subpoenas upon Mr. Hayter in this District in connection with this matter unless and until she retains counsel and/or appears personally or by telephone to attest to the fact that she is the actual plaintiff and is genuinely appearing pro se." See Exh. 4 hereto.

4. The foregoing ruling of the New York's Eastern District Court was no doubt influenced by the fact that Mr. Maydak has acknowledged identifying himself as the Plaintiff in contacting both parties to this action and alleged witnesses. See Exh.5 (a declaration allegedly made by the Plaintiff in opposition to the motion to quash) at ¶9; see also Maydak decl. at ¶4; Exh. 6 hereto. It is also telling that the Plaintiff concedes that her husband—"an experienced litigator"—has been assisting her. See Id. at ¶¶21-22 and that the Plaintiff is not even in this country at this time but is in Poland. Id. at ¶1.

5. For his part, Mr. Maydak claims that "I help her formatting her pleadings and correcting her grammar, I also provide her with copies of cases to read." See Maydak decl. at ¶4; Exh. 6 hereto. Mr. Maydak's declaration also addresses "the majority of the cases [he] has recently prosecuted…." Id. at ¶¶13-14.

6. In general, Rule 26(d) disfavors expedition in order to "protect[] defendants from unwarily incriminating themselves before they have a chance to review the facts of the case and to retain counsel." Notaro v. Koch, 95 F.R.D. 403 (S.D.N.Y. 1982) (citing 4A Moore's Federal Practice, para. 30.54 (1982): "This important protection maintains the fairness of civil litigation. Courts should not grant leave without some showing of the necessity for expedited discovery. The court must protect defendants from unfairly expedited discovery. Few opinions discuss motions for expedited discovery. Those that do, focus on the availability of expedited discovery to depose a person who will soon become unavailable.").

7. Before this case goes any further, the Defendants and the Court should know what we are dealing with. It must be known whether Mr. Maydak is the actual Plaintiff (and his foreign residing wife a mere shill) or is his wife the Plaintiff and he her *de facto* (albeit unlicensed) lawyer. Either situation is rife with issues, especially where discovery is concerned. Among other things, financial and personal information stands to fall into the hands of a very capable criminal whose talent for abusing such information is well-documented. There are high risks of identity fraud, market manipulation, the unlicensed and unregulated practice of law and a continuing fraud upon the Court. Clearly, this is not a situation that calls for expedition; instead it calls for caution.

8. There are few cases arising under FRCP 26(d). The leading authority on the subject of expedited discovery appears to be Notaro v. Koch, 95 F.R.D. 403 (S.D.N.Y. 1982), in which the New York district court enumerated four factors for determining the propriety of expedited discovery: "(1) irreparable injury, (2) some probability of success on the merits, (3) some connection between expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted." Id. at 405. See also Philadelphia Newspapers v. Gannett Satellite Info. Network, 1998 U.S. Dist. LEXIS 10511 (D. Pa. 1998)

9.  A review of the applicable authorities reflects that the kind of relief sought here is more appropriate where a plaintiff seeks relief because of the expedited nature of injunctive proceedings. Philadelphia Newspapers v. Gannett Satellite Info. Network, 1998 U.S. Dist. LEXIS 10511 (E.D. Pa. 1998) "Expedited discovery has been ordered where it would 'better enable the Court to judge the parties' interests and respective chances for success on the merits' at a preliminary injunction hearing." Id. at *2(quoting Edudata Corp. v. Scientific Computers, Inc., 599 F. Supp. 1084, 1088 (D.Minn. 1984), aff'd in part, rev'd in part on other grounds 746 F.2d 429 (8th Cir. 1985)).See also Better Packages, Inc. v. Zheng, 2006 U.S. Dist. LEXIS 30119, 8-9 (D.N.J. 2006)("If narrowly tailored to fit the needs of a preliminary injunction hearing, leave to conduct expedited discovery should be granted. ...[w]here the requests are overly broad and extend beyond the needs of the preliminary injunction, leave should be denied."[citations omitted]).

10. Other than unsupported aspersions on the Defendants' characters and highly speculative conclusions which are, at best, premised upon hearsay and legal assessments by a non-lawyer, the Motion is supported by no genuine or cognizable evidence whatsoever. Further, Mr. Maydak does not seek the kinds of preliminary relief that typically occasion such motions; nor has he offered anything extraordinary such as to warrant this Court's departure from prior reasoning and practice.

11. To the extent that the Court is inclined to grant the motion, the Defendants respectfully request a hearing during which this allegedly pro se plaintiff may herself appear and demonstrate that she is the one "prosecuting" this action (even if it is from Poland), that she is not aiding and abetting the unauthorized practice of law in this Court and any other concerns the Court might rightfully have given the admissions made in the exhibits to this response.

WHEREFORE, the Moving Defendants respectfully request that the Court deny the Plaintiff's

motion and grant any further relief the Court deems just and proper.

Respectfully submitted,

John C. Phillips, Jr. (Bar No. 110)
PHILLIPS, GOLDMAN & SPENCE, P.A.
1200 N. Broom Street
Wilmington, DE 19806
(302) 655-4200 (telephone)
(302) 655-4210 (fax)

Sam P. Israel, P.C.
One Liberty Plaza, 23rd Floor
New York, NY 10006
Tel. 212-201-5345
Fax 212-201-5343
e-mail: SMIsrael@aol.com

Attorneys for Defendants Edward Abraham
Rosenman, Wakisha Rosenman a/k/a Wakisha
Nocolas, First Guardian Financial Corporation,
Trafalgar Leasing & Finance Corporation, Cosmos
Group, Windsor Capital Ltd., and Fauzie Mohamed
a/k/a Fauzie Mohamaed

DATE:  March 1, 2007

CERTIFICATE OF SERVICE

I hereby certify that on March 1, 2007, a copy of the foregoing Defendants' Opposition to Motion to Reconsider was served upon the following person(s) via facsimile and first class, postage prepaid mail:

Mal Duszak
613 Cross Street East
McKeesport, PA 15035

Fax Number:  1-800-572-4403

_____
John C. Phillips, Jr., Esquire (#110)

EXHIBIT 1

Brainy convict back in town

# East Neighborhoods

## Brainy convict back in town

Sunday, December 19, 2004

By Torsten Ove, Pittsburgh Post-Gazette

Keith Maydak is back in town.

After two years as a prisoner in Canada, the convicted scammer from North Versailles was extradited in October and made a fresh appearance this week in U.S. District Court, where his eccentric brilliance and propensity to sue everyone has made him a legend.

At his trial a decade ago on charges of defrauding AT&T of $550,000 in a 900-number scheme, he wore a Beavis and Butt-Head T-shirt to show his disdain for the government.

Senior U.S. District Judge Alan Bloch gave him eight years in prison and Maydak has been filing suits ever since, once even serving papers on the judge at his house.

On Thursday, he stood again before Bloch. This time, he wore standard prison orange -- and handcuffs.

Bloch ordered that Maydak, 34, be held in the Allegheny County Jail until March 7, when the judge will sentence him for violating his probation by getting arrested for drunken driving on the South Side in 2001.

He could get two years, although Maydak says he won't serve time because he has already spent two years in jail in Canada on what he insists were false obstruction and immigration charges.

"Bloch gives everyone the maximum sentence, but the Bureau of Prisons will give me credit for the time served and he knows that," he said from the Allegheny County Jail. "This [jail term] is just a stall tactic to punish me for contesting my extradition from Canada."

How he arrived back in Bloch's courtroom after all these years is a convoluted tale, as most everything is with Maydak.

"He's real smart, and the smart ones are hard to catch," said Deputy U.S. Marshal Joe Moorhead, who brought Maydak back from Vancouver.

In the brains department, Maydak is several cuts above the average federal felon.

His computer expertise is such that, during his trial in 1994, court officials shut down a public computer in the clerk's office because they had seen him typing on it and feared he might be able to hack into the system.

He files his motions and lawsuits, lots of them, himself.

He once sued a food company from prison because, he said, its olive oil container didn't have as much olive oil as the label said it did.

Claiming he was a vegan, he made national news in 2000 when he sued to get soy milk served to him in prison. He eventually won, although federal authorities pointed out that he did not seem to be adhering strictly to his diet, considering that he had recently ordered a "giant beef stick."

Brainy convict back in town

Over the years, he has sued AT&T, Assistant U.S. Attorney Paul Hull, the Justice Department and the attorney general, among many others.

He said he even sued the Pittsburgh Post-Gazette when the paper wrote in 1994 that he had hacked into Westinghouse Electric's computer system at age 17 and put himself on the payroll.

He says the paper defamed him because that never happened, but that he dropped the suit anyway.

"I kind of just let it go," he said.

### 900 fraud

What he won't let go is his insistence that Bloch conspired with the prosecution to railroad him in the AT&T case.

Federal prosecutors say he has never presented any evidence to support that contention.

"Maydak has unsuccessfully prosecuted numerous collateral attacks on the judgment since 1994," Hull wrote in an extradition request to Canadian authorities.

In June 1991, Maydak set up a company called Confidential Services of America on Cavitt Avenue in Trafford to secure a pay-per-call 900 line through AT&T.

People who called the Confidential Services line, at $33.33 per call, heard a recording that told them how to set up their own 900 service.

But prosecutors said no consumers called the Confidential Services line -- only Maydak, his co-conspirator, Shawn P. Kovack, and others they recruited.

Maydak offered juveniles in Trafford $5 an hour for "racking phone calls" on the 900 line. He and Kovack traveled to out-of-the-way locations, including a truck stop in Oregon, to make calls.

Under a contract with Confidential Services, AT&T paid Maydak for the calls and billed the callers. But because the callers were fictitious names and companies set up by Maydak, there was no chance the phone company could collect.

AT&T had paid Maydak $550,000 by the time company officials were contacted by Trafford police and federal agents.

Maydak showed a touch of humor in the scheme. He used the aliases Richard Fibb, Cutlass Calais, Daniel Quayle and Mr. O. North to obtain credit calling cards from AT&T. He also got calling cards for several companies he set up, including Mr. Gickle's Pickle Farm.

But, he says, the government's case was all a lie.

"What they claimed I did is physically impossible to do," he said. "They said I made 43,000 phone calls from a truck stop in Oregon."

Maydak's parents, William and Christine Maydak, who run Chrissy's News Service in North Versailles, still think their son was the victim of a vast conspiracy.

The couple and one of Maydak's friends, Michael Sussman, who operates the Keith Maydak Foundation, have filed court papers of their own, accusing federal marshals of violating their civil rights in the search for Maydak in 2001.

Brainy convict back in town

"They're retaliating against anyone who knows him," Sussman said. "They have used every tactic possible to threaten his friends and associates."

The marshals are investigating Sussman and Christine Maydak for harboring a fugitive, according to court records.

Christine Maydak said Friday that she didn't want to answer questions "over the phone" and referred any queries to her son.

**On the lam**

Maydak's fugitive run began in 2001. It started when he filed a petition from prison for Bloch to clarify the definition of "excessive drinking," which he wasn't allowed to do when he got out.

Bloch ruled that Maydak could not drink at all. Maydak appealed and a hearing was arranged. In the meantime, prosecutors learned that Pittsburgh police had arrested Maydak a few weeks earlier for drunken driving in Riverfront Park on the South Side.

Maydak says he wasn't driving, but police said he drove his van onto the gravel bed of a railroad line, then got out stumbling. Police took him to the hospital for a sobriety test, where they said he caused a fuss.

"He was loud, disruptive and belligerent to the officers, patients and hospital staff," Hull wrote. "Maydak shouted at the hospital staff that he was 'DUI' and on every street drug known to man."

The charge meant Maydak was in violation of his federal probation. When he didn't show up at his hearing Sept. 27, 2001, Bloch signed a bench warrant and the U.S. marshals began looking for him.

Maydak says the marshals were really after him because Bloch was still angry at the lawsuit served at his house, even though it was thrown out. In addition to the probation violation, a marshals wanted poster indicates Maydak had made an "inappropriate communication" with a federal judge. It called Maydak "armed and dangerous."

Maydak says he was never notified of the probation violation hearing.

At any rate, he left Western Pennsylvania, traveled the country and ended up in Canada, where he was joined by his wife, a Polish national named Malgorzata Duszak. The two had married in the South Hills on Sept. 10, 2001, but Duszak returned to Poland after Maydak got into more trouble in Canada.

On Sept. 29, 2002, two constables on patrol in a known drug area of Vancouver spotted Maydak's Dodge Spirit and followed it to a parking garage. He jumped out and "approached the officers, demanding to know why he was being followed," according to court papers.

He produced an Ohio driver's license in the name of Randy Angra Mamyu, but the officers ran his plate and realized he was wanted in the United States. Immigration authorities later charged him with entering the country illegally.

He's been in jail ever since, fighting extradition every step of the way and accusing Canadian authorities of improper conduct in eventually granting the U.S. extradition request.

In one court filing, Maydak said the Canadian minister of justice "based his decision on an erroneous finding of fact that he made in a perverse and capricious manner."

EXHIBIT 2

DATE:       February 8, 2007

FROM:       K. Maydak
            M. Duszak

TO:         Sam Israel, Esq.

RE:         Duszak v. Rosenman, 07cv0009

            FOR SETTLEMENT PURPOSES ONLY, NOT TO BE FILED OR
USED AS AN EXHIBIT

            M. Duszak authorizes me to speak to you pertaining to this suit.  If you
wish to discuss resolving the matter, feel free to call.  However, if your intention is to
gather information or attempt to intimidate, propound a discovery request on the plaintiff.

            The answer or motion to dismiss is due on Monday, February 12, 2007, as
to the corporation.  It is due on the 14th as to Windsor, Fauzie, Cosmos, and Trafalgar.

            The Court did not yet join Dan Burgess, and a motion is being prepared to
add Mr. Hayter to the suit.

            You are not admitted in Delaware as an attorney and you have not sought
*pro hac vice* status.

**EXHIBIT 3**

AO 88 (Rev. 1/94) Subpoena in a Civil Case - SDNY WEB 4/99

Issued by the
## UNITED STATES DISTRICT COURT

SOUTHERN _____ DISTRICT OF _____ NEW YORK

MAL DUSZAK

V.

FIRST GUARDIAN FINANCIAL CORPORATION

## SUBPOENA IN A CIVIL CASE

CASE NUMBER: [1]  07cv0009
(District of Delaware)

TO: Standard & Poor's CUSIP Service Bureau
Attn: Legal Department
55 Water Street, 45th Floor
New York, NY 10041

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

XXX☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See attached list.

| PLACE The documents may be mailed in the attached envelope or we will pick them up from your location at 55 Water Street, NYC New York. | DATE AND TIME no later than March 2, 2007, 12:00 p.m. |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) Deputy Clerk U.S. District Court Southern District of NY | DATE February 15, 2007 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Clerk, United States District Court
500 Pearl Street, New York, NY  10017

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

[1] If action is pending in district other than district of issuance, state district under case number.

1. All communications, applications, facsimiles, letters, correspondence, invoices, payment vouchers, checks, documents, electronic records, etc relating to First Guardian Financial Corporation or Viyon Corp

2. All applications for a CUSIP number by First Guardian Financial Corporation or Viyon Corp. for common shares

3. All applications for a CUSIP number by First Guardian Financial Corporation or Viyon Corp for preferred shares

4. All applications for CUSIP number 320451107

5. All invoices for CUSIP number 320451107

6. All payments, copies of checks, drafts, payment authorizations for CUSIP number 320451107

7. All communications, correspondence, requests, filings, submissions, notes, files, or other documents relating to CUSIP number 320451107

FOR ANY QUESTIONS REGARDING THIS SUBPOENA, CONTACT:

Mal Duszak
613 Cross Street
East McKeesport PA  15035
1-888-546-2320
1-800-572-4403  Facsimile

Documents may be submitted by facsimile to comply with this subpoena

AO 88 (Rev 1/94) Subpoena in a Civil Case

# United States District Court
## Eastern District of New York

MAL DUSZAK

v

EDWARD ROSENMAN ET AL.

SUBPOENA IN A CIVIL CASE

CASE NUMBER: 07cv0009

(district of Delaware)

TO: Edward W. Hayter
165 Jaffrey Street
Brooklyn, NY 11235-3022

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case
PLACE OF TESTIMONY

| COURTROOM | |
|---|---|
| DATE AND TIME | |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.
PLACE OF DEPOSITION

| DATE AND TIME | |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attached Page

PLACE The documents may be mailed in the attached envelope. In the alternative, and at your request, they will be picked up from 165 Jaffrey Street, Brooklyn, New York. Call 1-888-546-2320 to arrange pickup.

DATE AND TIME
March 2, 2007
12:00 p.m.

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below
PREMISES

| DATE AND TIME | |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)

ROBERT C. HEINEMANN

DATE
February 7, 2007

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Clerk, U.S. District Court    271 Cadman Plaza East
Brooklyn, NY 11201    Phone:   347-394-1700

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Next Page)

02/22/07  15:12 FAX 913 663 2006          NORRIS & KEPLINGER, LLC                    ☑004

Feb 21 2007 1:55PM    WHITE & CHANG, P.A.              8502195709          P.2

2007-02-15 09:14         INFAX         8168992364 >>      8502195709  P 2/4

%AO88 (Rev. 1991) Subpoena in a Civil Case

### Issued by the
# UNITED STATES DISTRICT COURT

Western _____ DISTRICT OF ____ Missouri

HAL DUSZAK

v.

FIRST GUARDIAN FINANCIAL

| | |
|---|---|
| | **SUBPOENA IN A CIVIL CASE** |
| | Case Number:¹ 07cv0009 |
| | Pending in the District of Delaware |

TO:  Investorshub.com, Inc.
     Attn: Bob Zumbrunnen
     PO Box 29
     Freeman, MO  64746

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

  See attached page.

| PLACE The responsive documents may be mailed to the plaintiff in the attached envelope. If you prefer, defendant's courier will be dispatched to retrieve the documents at your location. | DATE AND TIME February 27, 2007 12:00 p.m. |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE February 7, 2007 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
U.S. District Court
Office of the Clerk
1510 Whittaker Courthouse
400 E. Ninth Street
Kansas City, MO 64106

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

¹ If action is pending in district other than district of issuance, state district under case number.

02/21/07  WED 12:26  [TX/RX NO 7550]

## RELEVANCE OF THE SUBPOENA TO THE LITIGATION

A securities fraud lawsuit was filed by the plaintiff in the United States District Court for the District of Delaware against First Guardian Financial Corporation ("FGFC"), a corporation previously known as Viyon Corp., formerly controlled by Edward Hayter. The lawsuit alleges a pattern of false and fraudulent actions meant to increase the price of FGFC's common stock while shares were unlawfully issued.

The plaintiff's investigation determined that the publicly known officers of the corporation were nominees. That is, during the time that the so-called President of FGFC issued press releases touting multi-million dollar transactions, the President of FGFC actually worked as a restaurant manager for restaurants controlled by Mr. Hayter's corporation, IBAC Corporation (IBCX).

As such, defendants in the federal securities fraud suit were named as John Doe. Under the Federal Rules of Civil Procedure, the plaintiff is now required to learn, through discovery, the identity of the persons responsible for the alleged fraudulent transactions.

A review of the website, investorshub.com, revealed that a user known as "mighty mouse" appears to discuss only stocks affiliated with or formerly controlled by Mr. Hayter. "mighty mouse" has repeatedly made attacks against users who criticize stocks that Mr. Hayter appears involved in. The position of "mighty mouse" has not changed even though the shares he discusses have lost the majority of their value which makes it illogical that an investor of ordinary prudence would retain such a position.

Therefore, the plaintiff has cause to believe that "mighty mouse" is affiliated with the promoters of the FGFC stock and that he may be a "John Doe" defendant in the lawsuit. The information requested will allow the plaintiff to conduct an investigation to determine whether "mighty mouse" should be added as a party defendant. Even if "mighty mouse" is not a control person or associated with the companies, "mighty mouse" has posted information that he asserts was obtained during discussions with management of the companies. The plaintiff desires to obtain the information from "mighty mouse" under oath as it will lead to relevant information necessary to prosecute the lawsuit.

### DOCUMENTS TO BE PRODUCED:

1. Any document showing the name, address, telephone number, and email address of the user known us "mighty mouse" on the website www.investorshub.com .

2. Any reports, files, logs, electronic files, databases, etc., that show the "IP Address" and/or "MAC address" which the user "mighty mouse" used during the last thirty days to access the website, www.investorshub.com.

EXHIBIT 4

Subj:    **Activity in Case 1:07-cv-00799-ARR-RER Subpoena dated February 7, 2007 to Edward W. Hayter Order on Motion to Quash**
Date:    2/28/2007 2:55:26 P M  Eastern Standard Time
From:    ecf_bounces@nyed uscourts gov
To:      nobody@nyed uscourts gov

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.**

**U.S. District Court**

**Eastern District of New York, Brooklyn**

## Notice of Electronic Filing

The following transaction was entered on 2/28/2007 at 2:54 PM EST and filed on 2/28/2007
**Case Name:**          Subpoena dated February 7, 2007 to Edward W  Hayter
**Case Number:**        1.07-cv-799
**Filer:**
**Document Number:** No document attached

**Docket Text:**
ORDER granting [1] Motion to Quash  Based on the submissions of both parties, the February 7, 2007 subpoena issued to Edward W  Hayter is quashed for improper service  See Declaration of Edward W  Hayter, paragraphs 7-9  Further, plaintiff Mal Dusak is enjoined from issuing and/or serving any other subpoenas upon Mr  Hayter in this District in connnection with this matter unless and until she retains counsel and/or appears personally or by telephone to attest to the fact that she is the actual plaintiff and is genuinely appearing pro se  The March 1, 2007 hearing is adjourned sine die  Mr  Hayter's counsel is directed to serve a copy of this order on Ms  Dusak and Mr  Maydak in the United States by facsimile today, and upon Ms  Dusak in Poland by mail no later than March 2, 2007  Ordered by Judge Ramon E  Reyes Jr  on 2/28/07  (Reyes, Ramon)

**1:07-cv-799 Notice has been electronically mailed to:**
Sam P  Israel smisrael@aol com

**1:07-cv-799 Notice will not be electronically mailed to:**

Wednesday, February 28, 2007 America Online: SMIsrael

EXHIBIT 5

Mal Duszak (MD 5063)
Ul. Chopina 2a/4
Elblag   82-300   Poland

mailing:

613 Cross Street
East McKeesport, PA   15035
(888) 546-2320  Telephone
(800) 572-4403  Facsimile

RESPONDENT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------X
In re:
                                    CV 07-799

Subpoena dated February 7,
to Edward W. Hayter.

        EDWARD W. HAYTER,           DECLARATION OF MAL
                                    DUSZAK
                Petitioner.
------------------------------X

    I, Mal Duszak, declare under the penalty of the laws of the United States of

America for perjury that the following information is true and correct to the best of my

knowledge, information, and belief (28 USC 1746):

    1   My name is Mal Duszak  I reside at Ul  Chopina, Suite 2a/4, Elblag, Poland

        Because mail takes approximately three weeks to reach Poland, for business

        activities in the United States, I often use the address of my husband, Keith

        Maydak, which is 613 Cross Street, East McKeesport, Pennsylvania 15035  I

        am a citizen of Poland.

    2.  I filed this lawsuit against First Guardian Financial Corp  and its affiliate

        companies in connection with a stock "pump and dump" where the defendants

        issued press releases claiming they were reducing their shares through a

"buyback" program when, in reality, they were issuing millions of new shares. *See* Exhibit A (press releases). At the times I bought the shares, the defendants had an authorized share count of 152,000,000 for the company. *See* Exhibit B.

3.  However, according to Computershare, a licensed stock transfer agent, First Guardian Financial Corporation issued millions of shares in excess of that

4.  The crux of my action is that I invested over $35,000 and received counterfeit shares, and that as a result of the defendants' false representations, the value of the shares plummeted

5.  A copy of my Complaint was attached to the declaration of Edward Hayter filed in this case and describes the action

6.  During the pump and dump scheme, the defendants issued various press releases using the name "Abraham Rosenman," who was purportedly the President of First Guardian Financial Corporation  *See* Exhibit A

7.  I ultimately reviewed a newspaper article reviewing a restaurant in Florida, revealed that "Abraham Rosenman" was, in reality, Edward A. Rosenman, an employee of a company called IBAC Corporation controlled by Edward Hayter

8.  Yet, a press release from FGFC asserted that Mr. Hayter had no involvement with the Company.  *See* Exhibit C

9.  My husband made a pretext call to Mr. Hayter in December 2006. In that pretext call, which I authorized, he stated that he was me and asked Mr. Hayter to return his call  Eventually, Mr. Hayter called a toll-free number that

announces that the call may be recorded. Maydak spoke to Mr. Hayter. A

copy of the transcript is attached to the Declaration of Keith Maydak filed

herewith. Mr. Hayter claimed that he had no involvement in FGFC and sold

his interest to third parties.

10. In my lawsuit, I did not sue Mr. Hayter. I believed that Mr. Hayter was being

forthright when he advised that he did not have involvement in the scheme. In

fact, from listening to the telephone recording, I believed that Mr. Hayter was

an honest man and I chose to invest into his company, IBAC Corporation.

11. However, from the tape recording, I learned that Mr. Hayter knew the identity

of the persons he sold his controlling interest in the company.

12. Since Mr. Rosenman was nothing but a restaurant employee, I needed to

discover who Mr. Hayter sold control to so I could join the correct parties in

my lawsuit.

13. I issued a subpoena to Mr. Hayter not to discover information in the lawsuit,

but to learn the identities of the defendants I sued as John Doe.

14. I did ultimately file a motion to join Mr. Hayter in the case because the

Secretary of the State of Delaware provided me documents showing that as

recently as July 2006, Mr. Hayter signed documents on behalf of FGFC. *See*

Exhibit B. Receiving the documents from the Secretary of State was the first

time I learned that Mr. Hayter lied about his involvement in FGFC.

15. But most likely there are additional parties involved who will be identified by

the documents that are being sought from Mr. Hayter pursuant to the

subpoena.

16. At the time the subpoena was issued, I did not know Mr Hayter would be a party as I did not see the Secretary of State documents.

17. I have reviewed the documents executed by Mr Hayter and his lawyer, Sam Israel.

18. As to the telephone calls in question, I refer the Court to the Declaration of Keith Maydak.

19. However, as to the inferences that I did not file this suit, the allegations are false.

20. I have signed the documents in question in accordance with Federal Rule of Civil Procedure 11   The Complaint is verified under 28 USC §1746.

21. The fact that my husband has litigation experience and, jointly along with me, sent a fax to Mr. Israel, does not equate to my husband "representing me."

22. Of course, my husband has assisted me with my legal case and we have gone over the facts of this case together, but he does not "represent" me.

23. I have litigated cases before in both state and federal courts.

24. As to the claims made by Mr Hayter's counsel that I filed this case to somehow extort a settlement, I invested approximately $35,000 in the FGFC pump and dump scam based on myriad press releases claiming that million dollar deals were occurring and that the company made over $1,000,000 profit on a land deal in Canada, among other things.

25. My lawsuit outlines the misleading press releases that were occurring, and I believe that my allegations state a *prima facie* case of stock fraud.

26. As to the request that I be enjoined from issuing any discovery unless I appear by counsel or personally show up to Court, such a request is unheard of. My documents are signed pursuant to 28 USC §1746

27. I have reviewed legal pleadings filed in the Western District of Missouri *See* Exhibit D. In that case, Mr. Israel purports to represent all of the defendants in this case, apparently including Edward A. Rosenman. However, in reviewing the conversation with Mr Hayter, it appears that he has the conflicting position that Edward A Rosenman acted without his involvement

Dated this 26th day of February, 2007

_____
Mal Duszak

**EXHIBIT 6**

Mal Duszak (MD 5063)
Ul. Chopina 2a/4
Elblag   82-300   Poland

mailing:

613 Cross Street
East McKeesport, PA  15035
(888) 546-2320  Telephone
(800) 572-4403  Facsimile

RESPONDENT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------X
In re:
                                CV 07-799

Subpoena dated February 7,
to Edward W. Hayter.

     EDWARD W. HAYTER,          DECLARATION OF KEITH
                                MAYDAK

            Petitioner.
-------------------------------X

I, Keith Maydak, declare under the penalty of the laws of the United States of

America for perjury that the following information is true and correct to the best of my

knowledge, information, and belief (28 USC 1746):

1. My name is Keith Maydak. I reside in Panama City, Panama, and in other

   locations near that area.

2. I am lawfully married to the plaintiff, Mal  Duszak.

3. However, I did not sign any legal pleading on her behalf. She signs her own

   documents.

4. Of course, I help her with formatting her pleadings and correcting her grammar, I

   also provide her with copies of cases to read.

5. I have reviewed the Declaration of Sam Israel. Mr. Israel misrepresents the conversation that occurred with him. Specifically, on February 8, 2007, Mr. Israel called me. I answered the telephone, "Hello, may I help you?" Mr. Israel said, "Hi. Keith Maydak please." When I identified myself as Keith Maydak, Mr. Israel asked, "Umm, are you the plaintiff in a lawsuit against Edward Rosenman?" I informed Mr. Israel that I was not. Mr. Israel asked me who the plaintiff was. I told Mr. Israel that the plaintiff is listed in the caption of the lawsuit. I did inform Mr. Israel that my wife authorized me to speak with him. At that time, Mr. Israel went into a tirade that I was practicing law without a license. I told Mr. Israel that my wife signed every one of her legal pleadings under Rule 11. Mr. Israel stated he represented the defendants in the lawsuit, but would not identify which defendants in the lawsuit he represented. Mr. Israel asked me to fax him evidence that my wife made the investments in question. After my conversation, I discussed the conversation with my wife and she instructed me to send Mr. Israel copies of the stock purchases. She also instructed me to draft a joint letter from both of us with the language that Mr. Israel attached as an exhibit. I did so and Mr. Israel attached it to his affidavit.

6. I have reviewed the Declaration of Edward Hayter. Mr. Hayter is correct that I made a pretext telephone call to him in December 2006 and that, when he returned the call on a telephone number that announced it may be recorded, I advised him that I was Mal Duszak and engaged in a dialogue with him.

7. Pretext telephone calls are a routine investigatory tool used by both private investigators and law enforcement agencies to obtain information.

8. In this case, I had the permission of my wife before I made the call and I made no material misrepresentation to Mr. Hayter in the course of the pretext call except that I identified myself as my wife.

9. A true copy of the text of the conversation is attached hereto as Exhibit A.

10. The conversation indicates that Mr. Hayter had no control over FGFC and did not know much about the company.

11. Yet, according to the documents from the Delaware Secretary of State, Mr. Hayter was the President and CEO in July 2006, which is after they allegedly started the "buyback."

12. I have read Mr. Israel's affidavit inferring that I am a professional litigant.

13. The majority of the cases I have recently prosecuted have been against government agencies involving requests for information and records under the Freedom of Information Act.

14. Contrary to counsel's claim that I sue to force settlements with vulnerable persons, I have only settled one lawsuit over the last two years. That lawsuit was against the United States under the Federal Tort Claims Act in the Northern District of New York wherein United States District Judge David Hurd approved a settlement of $9,750.00 to me by the Government. *Maydak v. Christine*, 98cv1186(N.D.N.Y.).

15. Finally, Mr. Israel called me a "known fraudster." I was convicted in 1993 for an alleged fraud offense involving AT&T stemming from a 1991 contract. That is my only criminal conviction. That incident occurred over fifteen (15) years ago

and does not, somehow, grant *carteblanche* to Mr. Hayter and the other defendants to defraud retail investors.

16. Apparently, Mr. Israel's defense for his client is to attack the messenger rather than to defend against the allegations in the instant lawsuit.

17. At no point in Mr. Israel's documents does he assert that the allegations that his clients defrauded investors is false.

18. I had two conversations with Edward Rosenman, a defendant in the lawsuit. During the first conversation, Mr. Rosenman represented to me that he never heard of First Guardian Financial Corporation. During the second conversation, Mr. Rosenman advised me that he acted for Mr. Hayter at all times material and did not author the press releases in question.

Dated this 26th day of February, 2007.

_____
Keith Maydak